RAWLS, Judge.
Appellant Moyer, by this appeal, challenges an order adjudging him incompetent.
On January 27, 1972, while appellant was a patient in Room 521, Riverside Hospital, Jacksonville, Florida, his niece [1] filed a petition alleging that appellant was believed to be incompetent, “and the rjature of his *287 disability is .both mental and physical.”[2] A copy of the petition was not served on appellant. On the day the petition was filed the court appointed a committee of two physicians and a lay person to examine appellant and ascertain his mental and physical condition. On the 31st day of January 1972, the examining committee filed a printed form report stating in part:
“ . . . having made a thorough exami nation of the mental and physical condition of the said alleged incompetent, begs to submit the following report: 1. We determine that he is mentally incompetent, the apparent cause being Chronic Brain Syndrome due to cerebrovascular insufficiency and diabetes. Commitment not recommended.
“3. . . . his propensities are that he is oriented to time, person, and place, restless, mood swings, subject to periods of agitation. Takes Mellaril for agitation. Borderline abnormal EEG.
“4. ... he does require mechanical restraint to prevent him from self-injury
or violence to others.
“6. ... is destitute .
“7. . . . the estate of said person is not sufficient to support and maintain said person . . . ”[3]
The above underlined portions were typed into the printed form.
On the same date that the examining committee filed its report a deputy sheriff served appellant with a “Notice to Alleged Incompetent” which stated that a petition had been filed alleging appellant was incompetent because of “mental” disabilities.[4] The above mentioned instrument constituted the sole record notice served upon appellant as to his alleged incompetency. On February 2, 1972, appellant wrote a letter to a friend stating: “On the fourth of February (this Friday) they have set a hearing on a ‘Petition for Adjudication of Insanity’.”
The hearing was held on February 4, without appellant’s presence,[5] and he was adjudged mentally incompetent. No finding was made at the adjudication that appellant was “incapable of . managing his property, or is likely to dissipate or lose his property or become the victim of designing persons . . . ” [6] The only facts found by the order adjudging appellant incompetent were that he had no hallucinations, and that “he is oriented to time, person and place, restless, mood swings, subject to periods of agitation . . . Takes Mellaril for agitation. Borderline abnormal EEG.” This finding is not sufficient to sustain the order adjudicating appellant incompetent.
As we stated in In re Pickles’ Petition: [7] “The pertinent question presented to the judge in cases such as this is whether the alleged incompetent is suffering from a mental illness to such an extent that he is incapable of caring for himself, or managing his property or is likely to dissipate or lose his property or become the victim of designing persons.”
*288 The propensities recited in the trial judge’s order fall far short of meeting the clear language of the statutory provision.
This record further reflects an absence of any adversary proceeding in the adjudication process. The next of kin who executed the petition for adjudication of incompetency was, pursuant to her petition, appointed guardian of appellant’s substantial estate valued in excess of $100,000.00 on the same date that he was adjudicated incompetent. The short notice to the alleged incompetent and failure to advise him of what deficiency he suffered in particularity, coupled with the size of his estate, clearly falls within the following guidelines set forth by the Supreme Court in In re Hnat: [8]
“In addition to the serious questions raised concerning adequate notice of hearing, opportunity to present evidence and testimony, due process and sufficiency of the evidence, this case must also fall because of a violation of that portion of Fla.Stat. § 394.22(4), F.S.A., reading:
‘An opportunity to be represented by counsel shall be afforded to every proposed patient, and if neither he nor others provide counsel, the court may appoint counsel.’ ”
By her brief, appellee-niece and her attorney advise: “We have no zest for this chore . . . The reluctant signing of the necessary Petition had as its sole purport the getting of her uncle into the hospital where his presence was desperately needed for his own welfare.” The brief continues to reiterate that those closest to appellant through the years were acting solely in the interest of his welfare. As we stated in Pickles: “No question of bad motive on anyone’s part is demonstrated in this proceeding. The concern of the trial judge and the examining committee [and we here add, the niece and others who played any part in the instant proceeding] has obviously been directed toward assisting Appellant.”[9] However, we also observe that oftentimes citizens are deprived of their property and freedom in the name of incompetency to the same effect as a common thief. The material difference is that a common thief is entitled to counsel as a matter of right. Further, a common thief is entitled to be advised in particularity of the acts and proof thereof which he has allegedly been guilty of committing prior to his adjudication of guilt and incarceration. It would only seem fair and proper that a like standard be afforded an alleged incompetent.[10]
The order of incompetency is reversed and set aside without prejudice to that Court to process and conduct a proper hearing on the issue of appellant’s competency.
Reversed.
SPECTOR, C. J., and CARROLL, DONALD K., J., concur.

. Appellant has no lineal descendants; his niece who executed the “Guardianship Only” form petition, and a nephew were designated as members of the family.

. F.S. § 394.22(1), F.S.A., provides, inter alia, that an alleged incompetent be “incapable of caring for himself or managing his property, or is likely to dissipate or lose his property or become the victim of designing persons, or inflict harm on himself or others ...”

. On February 4, 1972, the niece, who filed the petition of incompetency, filed a petition for letters of guardianship of appel-ant, and alleged that his estate was of a value in excess of $100,000.00.

. The return reflected: “Received this writ on January 28, 1972”, but same was not served until January 31, 1972. It is assumed that no service was attempted during the weekend (January 28 was on a Friday).

. No attorney or guardian ad litem was appointed to represent appellant at any stage of the proceedings.

. F.8. § 394.22(1), F.S.A.

. In re Pickles’ Petition, 170 So.2d 603, 613 (1 Fla.App.1965).

. In re Hnat, 250 So.2d 890, 891 (Fla.1971). Also see In re White, 230 So.2d 480 (1 Fla.App.1970).

. In re Pickles’ Petition, 170 So.2d 603, 614 (1 Fla.App.1965).

. Forms should be carefully scrutinized when used in proceedings such as the instant one.